Carole E. Handler (State Bar No. 129381)
chandler@lathropgage.com
Brianna Dahlberg (State Bar No. 280711)
LATHROP & GAGE LLP
1888 Century Park East, Suite 1000
Los Angeles, CA  90067
Telephone:  (310) 789-4600
Fax:  (310) 789-4601

Attorneys for Plaintiff
ORPHIC LLC

Elizabeth A. Bell (State Bar No. 205868)
ebell@elbelaw.com
8335 Sunset Boulevard, Suite 221
Los Angeles, CA 90069
Telephone:  (323) 306-4077
Fax:  (323) 656-1396

Attorney for Plaintiff
CURRADO MALASPINA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ORPHIC LLC, a California limited liability company; and CURRADO MALASPINA, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> MASSIMO NOCERINO a/k/a MAX NOCE, an individual; BRITTNEY HASTINGS, an individual; NOCE, LLC, a California limited liability company; and DOES 1-10, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR:** <br> **1. BREACH OF FIDUCIARY DUTY** <br> **2. VIOLATION OF LANHAM ACT** <br> **3. CONSTRUCTIVE TRUST** <br> **4. UNFAIR COMPETITION** <br> **5. ACCOUNTING** <br> **6. CONSPIRACY** <br> **7. DECLARATORY JUDGMENT** <br> **8. INDEBITATUS ASSUMPSIT** <br> **9. FRAUDULENT CONCEALMENT** <br><br> <u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiffs Orphic, LLC ("Orphic") and Currado Malaspina ("Malaspina") hereby allege against defendants Massimo Nocerino a/k/a Max Noce ("Noce"), Brittney Hastings ("Hastings"), and Noce LLC (collectively referred to as "Defendants" herein) as follows:

## INTRODUCTION

1.      This case involves the wrongful appropriation of corporate business opportunities rightfully belonging to a limited liability company, Orphic LLC ("Orphic" or the "Company") by two minority members of Orphic for their own purposes.  Their actions breach the fiduciary duties and duties of loyalty owed by members of an LLC to the company and their fellow members.  Defendants are attempting to create their own competing business using the assets of Orphic for their own profit and purposes, at the expense of the investing members, and have misappropriated Orphic's tangible and intellectual property, certain financial assets, and corporate opportunities in pursuit of this unlawful goal.

2.      Not only have the Defendants' actions caused financial injury and loss to Orphic and the investing members – in addition, they have tarnished the image and reputation of Orphic.  Defendants' conduct and careless management of Orphic have damaged the public perception of Orphic in the eyes of designers, suppliers, customers, and the general public.  Their conduct, designed to benefit themselves, thwarted the main objective of the Company to attract emerging and talented fashion designers and artists to consign their work to Orphic, and thus to build a recognizable fashion and retail business in Los Angeles.

3.      Further, by their attempt to appropriate the word mark and trade name "Orphic" for their own competing business, located at the very premises originally rented and improved for Plaintiff Orphic using the investing members' contributions, Defendants have attempted to trade on the reputation and standing of the original "Orphic" and to deceive the public.

- 1 -

COMPLAINT

## JURISDICTION AND VENUE

4.      This is a civil action alleging trademark infringement under the Lanham Act of 1946 (as amended) 15 U.S.C. §1125 (a), and related claims for breach of fiduciary duty, unfair competition, conspiracy, constructive trust, accounting, assumpsit, and fraud under the statutory and common law of the State of California.  This Court has subject matter jurisdiction over this entire action pursuant to 28 U.S.C. §§ 1331, 1332, and 2201, and the Declaratory Judgment Act, 28 U.S.C. § 2291.

5.      This Court has supplemental jurisdiction of the California state statutory and common law claims under 28 U.S.C. §§ 1338(b) and 1367(a).

6.      This Court has personal jurisdiction over the Defendants and venue is proper in this Court because, upon information and belief, Defendants Noce and Hastings reside within this judicial district, all Defendants conduct business within the district, and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

7.      Plaintiff Orphic is a California limited liability company which originally established its principal place of business at 9030 Sunset Boulevard, West Hollywood, CA 90069.  Orphic is a high-fashion designer clothing boutique and art gallery, located in the prestigious Sunset Strip.

8.      Plaintiff Malaspina is a Member and majority owner (67%) of Orphic.

9.      Malaspina has been the primary investor in Orphic.  Malaspina has substantial business experience and is familiar with the worlds of art and fashion that were to be the source of the new boutique's business.

10.      Defendant Noce is a Member and minority owner (12%) of Orphic. Upon information and belief, Noce is an Italian national who is a resident of Los Angeles, California.

COMPLAINT

11.     Defendant Brittney Hastings is a Member and minority owner (11%) of Orphic.  Upon information and belief, Hastings is a resident of Los Angeles, California.  Based upon information and belief, Hastings is married to Noce.

12.     Defendant Noce, LLC is a California limited liability company, with its Articles of Organization filed on October 2, 2014.  Upon information and belief, its principal place of business is now located at 9030 Sunset Boulevard, West Hollywood, CA, the same address as was acquired for Orphic.

13.     Plaintiffs are unaware of the true names and capacities, whether individual, corporate, associate, agent, employee, or otherwise, of Defendants Does 1 through 10, inclusive, and therefore sues those Defendants by such fictitious names.  Plaintiffs will seek leave to amend this Complaint to allege such Defendants' true names and capacities when such information has been ascertained.

14.     Plaintiffs are informed and believe, and based thereon allege, that in performing the acts that give rise to this Complaint, each of the defendants named herein, including Does 1 through 10, was acting jointly with and under the direction of each of the other defendants, and with the knowledge, authority, approval and ratification of, and as the agent for and on behalf of, each of the other defendants.

## GENERAL ALLEGATIONS

### Background and Founding of Orphic LLC

15.     In or around December 2012, Malaspina, Noce and Hastings, along with third party Valentino Negri ("Negri") formed the Orphic business as Orphic LLC, a California limited liability company.  Malaspina, Noce, Hastings, and Negri are sometimes collectively referred to as "the Members" herein.

16.     Orphic was conceptualized as a high-end designer clothing boutique and art gallery located on the Sunset Strip in West Hollywood, California, where a number of significant galleries and designer boutiques are located.

17.     It was intended that most of the clothing and art would be sold on

COMPLAINT

consignment.  Ownership of the items on display in the boutique would remain with the designers and artists.  Orphic would accept the goods as the consignors' agent and sell the goods on the consignors' behalves.  Orphic would not make payment to the consignor until the item sold. When the item sold, the consignor would be entitled to receive the proceeds from the sale, minus a commission to Orphic.

18.    On or around December 1, 2012, Noce registered the Internet domain name orphicla.com.

19.    On or about December 4, 2012, Hastings filled out an application with LegalZoom to create the corporate documents for Orphic.

20.    On or about December 7, 2012, the Members entered into the Operating Agreement for Orphic and filed Articles of Organization for the Company with the California Secretary of State, which are attached hereto as Exhibit A.

21.    On or about January 4, 2013, Orphic opened business checking and savings accounts at Bank of America.

22.    At the time the business was founded, it was understood and agreed amongst the Members that Malaspina and Negri, who both reside in Italy, would provide capital investments in the business.  It was understood and agreed amongst the Members that Noce and Hastings, who reside in Los Angeles, would contribute their management services in lieu of a capital contribution.

23.    On or about January 3, 2013, Malaspina provided $130,000 in cash as an initial capital contribution to Orphic in exchange for a 67% membership interest in the company.  Later, Malaspina provided approximately another $100,000 in cash in additional funding for Orphic.

24.    Had Noce and Hastings disclosed that the business would not be managed in the interest of the LLC, but that they intended to use the business to extract personal benefits for themselves, Malaspina would never have invested in

COMPLAINT

Orphic.

25.    Noce and Hastings did not make any capital contribution to Orphic. Instead, it was agreed that Noce and Hastings would each be granted a minority membership interest (12% and 11%, respectively) in exchange for contributing their employment services to manage the business.

26.    In exchange for a 10% membership interest in the Company, it was agreed that Negri, who resides in Italy, would contribute his employment services by attracting and working with Italian designers and helping curate the items offered for sale.  In addition, over the course of the Company's operations, Negri also made investments of cash in the Company.

27.    At all relevant times, Noce and Hastings were solely responsible for management and day-to-day operations of Orphic, including oversight of the company's finances, control over its bank accounts and credit cards, and payments owed to consignors and creditors.  Noce generally handled the business operations of Orphic, while Hastings was primarily responsible for the website and contributed graphic design services on the company's flyers and other promotional materials.

28.    At all relevant times prior to the termination of their management serves on or about September 30, 2014, Noce held the office of President, and Hastings held the office of Vice President.

29.    Neither Malaspina nor Negri has ever held any office with Orphic.

30.    On or about January 8, 2013, Orphic entered into a Standard Office Lease ("Lease") by and between M & A Gabaee, a California limited partnership, ("Landlord") and Orphic for the lease of a retail storefront  at 9030 Sunset Boulevard, West Hollywood, CA 90069.  The Lease was on a month-to-month basis beginning on March 1, 2013.  Orphic was permitted early occupancy to remodel the premises and install telephones, computers and furniture.  The base rent was $6,000 per month, including all utilities.

COMPLAINT

31.     From January to March 1, 2013, Orphic substantially remodeled the premises using Malaspina's financial support and contributions.  Upon information and belief, the total costs of remodeling were approximately $80,000.  The premises were gutted.  A new wood floor and walls were installed.  A custom marble bar and new light fixtures, new bathroom and fixtures, cabinets and shelves were installed.  An alarm system and security cameras were installed.

32.     On or around March 1, 2013, the refurbished Orphic store opened to the public and began selling designer clothing and artwork on consignment.

33.     In or around March 2013, Orphic began operating its e-commerce website at the domain www.orphicla.com, through which it marketed and sold its clothing and artwork to consumers throughout the United States and the world.

34.     Orphic also owns and operated various social media accounts on Facebook, Twitter, Instagram and Tumblr, all of which Defendants have misappropriated and continue to operate under the Orphic name in direct violation of Orphic's rights therein.

### **The Orphic Trademarks**

35.     Since its founding, Orphic has marketed and sold its designer clothing and artwork under the trade name ORPHIC.  The name has become associated with the business of Orphic LLC in the minds of fashion designers, artists and the public.

36.     Beginning in or around March 2013, Orphic used the following graphical logo ("Orphic Logo") in commerce in connection with its business (prior to March 2013, Orphic used several similar variations of the Orphic Logo before settling on the current version thereof):



COMPLAINT

37.     Orphic has common law rights in the ORPHIC trade name and Orphic Logo based on its continuous use of the name and logo both in West Hollywood in connection with its brick-and-mortar retail store, and throughout the United States and internationally in connection with its e-commerce website and various social media websites.

38.     Orphic's customers have come to associate the ORPHIC trade name and Orphic Logo with Orphic's retail store and website and various social media websites.  Orphic has generated substantial goodwill in connection with the ORPHIC trade name and Orphic Logo, which are distinctive.  Thus, the ORPHIC trade name and Orphic Logo serve as valid trademarks for Orphic and its goods and services.

### Noce's and Hastings' Theft of Company Funds and
### Refusal To Provide an Accounting

39.     Based upon information and belief, over the course of the operation of the business, Noce and Hastings failed to report all income, used Company funds to fund their own personal expenses, and entered into related party transactions and loans without the other Members' knowledge or approval.

40.     Upon information and belief, Noce and Hastings used consignment sale proceeds to pay other expenses before paying the consignors of the goods, and engaged in other improper use of Company funds and accounting practices.

41.     All of these actions not only misappropriated Company funds, they severely impacted Orphic's reputation.

42.     Over the course of the business's operations, Noce repeatedly approached Malaspina and Negri asking them to contribute more money to the business.  However, when asked to provide accounting records of the Company's business, he failed to do so.

43.     On or about September 17, 2014, Noce sent an email to Malaspina and

COMPLAINT

Negri telling them that Orphic was insolvent.  Noce told Malaspina and Negri that unless they invested more money, Noce would close the store.

44.   On or about September 18, 2014, Malaspina discovered that the passwords to the Company's bank accounts had been changed so that he could not monitor them.

45.   Malaspina refused Noce's demands for more money and instead, through his counsel, demanded that Noce provide the bank account log-in information, Orphic's complete accounting records, and its current inventory.

46.   Noce has failed and refused, and continues to fail and refuse, to make a full accounting of the Orphic's records available, despite numerous written demands.

47.   Thereafter, from September 22, 2014 to on or about October 15, 2014, Noce and/or Hastings made numerous withdrawals and payments from Orphic's checking account, including for personal expenses (*e.g.*, parking, Uber taxi service, wine, groceries, gas) and related party payments (*e.g.*, a check for $2,450 to Brittney Hastings' sister, Mary Hastings, on September 22, 2014).

48.   Upon information and belief, Noce and/or Hastings made these withdrawals and payments with full knowledge that certain consignors were still owed money on consignment items that had been sold by Orphic.  Some of the consignors' outstanding claims date back to July 2014.

49.   From on or about September 23, 2014, Malaspina, through his counsel, made numerous requests for access to the store to take inventory of the merchandise, consignment items, fixtures, improvements, personal property, and other materials therein and to secure the same and for access and control over Orphic's books, records and accounts.

50.   Despite these numerous requests, Noce and Hastings repeatedly and wrongfully denied such access and improperly continued to exercise exclusive

COMPLAINT

possession of and control over the same to the exclusion of the other Members and to their detriment, and the detriment of Orphic.

51.     On or about September 30, 2014, counsel for Malaspina, who holds a 67% majority of the voting interest in Orphic, notified Noce and Hastings' counsel that he had voted to terminate their management services.  Demand was made that Noce and Hastings cease all further actions with respect to any Company funds and accounts, and that they turn over the same to Malaspina.

52.     Also on September 30, Malaspina voted to wind-up and dissolve Orphic based upon Noce's representation that the business was insolvent.  At the time, Malaspina did not know about Noce and/or Hastings' actions in depleting the Company's bank accounts, or that they had attempted to register the Company's trademarks in their own names, or that they had been secretly planning to take over and continue to run the business without Malaspina or Negri.

53.     Noce and Hastings disputed the effectiveness of Malaspina's vote to wind-up and dissolve the company.

54.     Upon information and belief, after Noce and Hastings' employment was terminated, and after they were given express notice that they were not to touch the Company's funds, they continued to deplete the funds in Orphic's bank accounts until the accounts were overdrawn.

55.     On or about October 7, 2014, Malaspina was finally provided with the log-in information for the Company's bank accounts.  Malaspina discovered that Noce and Hastings had depleted and overdrawn the accounts with personal charges at or around this time.

56.     Thereafter, upon investigation by his counsel, Malaspina and Negri discovered that Noce and Hastings had every intention of continuing the business at the same location using the ORPHIC name and logo with new investors, without Malaspina or Negri, through their newly formed company, Defendant Noce, LLC.

COMPLAINT

On information and belief, this plan was longstanding, indeed, going back to the formation of Orphic, LLC.

57.     Upon information and belief, and as demonstrated by their actions, Noce and Hastings had been planning their takeover of the Orphic business for months, and all the foregoing actions were taken with this goal in mind.  In particular, Plaintiffs are informed and believe that Noce had been intentionally undermining the value of Orphic in an effort to reduce the purchase price payable by Noce to Malaspina and Negri upon a potential sale of their interests in Orphic to Noce.

58.     Upon this discovery, Malaspina's counsel immediately notified Noce and Hastings that there would be no further efforts to wind-up or dissolve Orphic.

59.     No certificate of dissolution for Orphic was ever filed with the Secretary of State.  Orphic remains an active California limited liability company.

60.     To date, Noce and Hastings have actively thwarted, and continue to actively thwart, investigative efforts into their management of Orphic and have attempted to conceal their wrongdoing.  Only after Malaspina obtained access to the Company checking account log-in information, which had been withheld by Noce, was he able to discover Noce and Hastings' long-running scheme to use Orphic as their own personal piggy bank, to the detriment of the Company and its Members. Orphic expects that once it, or a Court appointed receiver, gains access to the actual books and records of the Company and the full extent of Defendants' malfeasance can be uncovered, what they know now and can allege in this Complaint only will have scratched the surface of Defendants' misconduct.

## Noce and Hastings Fraudulently Apply To Register Orphic's Trademarks Under their Own Names

61.     On or about June 16, 2014, Noce and Hastings filed an application with the U.S. Patent and Trademark Office ("USPTO") for registration of the word

COMPLAINT

mark ORPHIC for retail services and on-line retail services.  Among other things, the application falsely asserted that Noce and Hastings as individuals were the owners of the word mark ORPHIC, when in fact, Orphic is the owner of the mark.

62.     On or about September 17, 2014, Noce and Hastings filed an application with the USPTO for registration of the Orphic Logo for retail services; namely, brick-and-mortar shops and online store featuring women's and men's fashion clothing; clothing accessories, leather goods, footwear, bags, jewelry, artwork.  Again, this application also falsely asserts that Noce and Hastings were the owners of the mark, when in fact Orphic is the owner of the mark.

63.     The specimens of use submitted with the trademark applications included a photograph of the Orphic storefront, screenshots of Orphic's Facebook page and website, and Orphic's marketing materials.  Noce and Hastings falsely represented to the USPTO that these materials were specimens of their own use of the marks at issue, when in fact they are specimens of use of the marks by Orphic.

64.     Noce, LLC has never been authorized to use the ORPHIC trade name or Orphic Logo.

65.     Neither Noce nor Hastings have ever been authorized to use the ORPHIC trade name or Orphic Logo in connection with any other ventures apart from Orphic LLC.

66.     Noce and Hastings filed the trademark applications in their own names without the knowledge or authorization of the other Members of Orphic.

67.     On or about October 20, 2014, Orphic notified Defendants, through their counsel, that any attempt by Defendants to use the ORPHIC trade name or Orphic Logo without Orphic's consent would constitute a willful infringement of Orphic's rights.

68.     On or about November 26, 2014, the USPTO issued a Final Office Action refusing registration of the ORPHIC word mark.  A copy of the Final Office

- 11 -

COMPLAINT

Action is attached hereto as Exhibit B.  Upon information and belief, Noce and Hastings plan to take further actions with respect to the USPTO's determination.

**Noce and Hastings Transfer Orphic's Lease to Their Company, Noce LLC, and Take Over Orphic's Business**

69.     Upon information and belief, on or about October 1, 2014 Noce, Hastings, or Noce, LLC entered into a new lease for the retail storefront premises located at 9030 Sunset Boulevard, West Hollywood, CA 90069, which comes with all of the improvements made thereto by Malaspina and Negri's investment in Orphic.

70.     On or around October 2, 2014, Noce and Hastings formed Noce, LLC for the purpose of taking over the retail storefront, website, and social media accounts and generally operating the same business, including using the name ORPHIC and the Orphic Logo in connection therewith.

71.     On or about October 22, 2014, Noce and Hastings, through their counsel, contacted Orphic's consignors and other creditors falsely representing to them that Orphic had ceased its operations and was in the wind-up process.  Given the importance of attracting designers and artists to consign their work to Orphic, these falsehoods cut to the very heart of Orphic's business.  They further asserted that since their employment with Orphic had been terminated, they were not responsible for Orphic's outstanding debts or for any missing consignment items. Finally, they further informed Orphic's consignors that they would be embarking on "a new venture" and promised to "keep them updated."

72.     Upon information and belief, Defendants subsequently contacted Orphic's consignors and customers and, through a series of untruths, solicited them into doing business with Noce, LLC instead of with Orphic, thereby interfering with and causing harm to Orphic's business relationships.

73.     Through their actions, Defendants have misappropriated corporate

opportunities in Orphic's established line of business, the continuation of which Ophic had an interest and expectancy, and the financial resources to pursue.

74.     Noce and Hastings failed to disclose the material facts as to the corporate opportunities to Orphic's other Members, failed to offer Orphic the first right to obtain the corporate opportunities, and did not seek authorization or approval from Orphic's other Members before they misappropriated the opportunities for themselves.

75.     On or about November 6, 2014, Defendants re-opened the retail store at the same location, using the ORPHIC name and Orphic Logo without Orphic's authorization to market and sell designer clothing and artwork.

76.     Also on or about November 6, 2014, Defendants re-opened the e-commerce website at the domain, orphicla.com, and continued to wrongfully administer Orphic's social media accounts, using the ORPHIC name and Orphic Logo without Orphic's authorization to market and sell clothing and artwork.

77.     Defendants' unauthorized use of the ORPHIC name and Orphic Logo is infringing and deceptive.  Defendants are deceiving consumers, competing unfairly, falsely passing themselves off as Orphic, and unfairly trading on, appropriating and tarnishing the reputation and goodwill of Orphic for their own commercial gain.

78.     Upon information and belief, Defendants' adoption and use of Orphic's name and logo was and is deliberate, intentional, knowing and willful and done with the intent to confuse, mislead, or deceive the public, thereby causing Defendants to profit to an extent which they would not otherwise enjoy.

79.     By reason of the acts of Defendants alleged herein, Orphic has suffered, is suffering and will continue to suffer irreparable damage, and unless Defendants are restrained from continuing these wrongful acts, the damage to Orphic will increase.

80.     Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

## FIRST CAUSE OF ACTION

### (Breach of Fiduciary Duty)

### (Orphic and Malaspina Against Noce and Hastings)

81.     Orphic and Malaspina restate, reallege, and incorporate by reference all preceding paragraphs as though fully set forth herein.

82.     As detailed more fully herein, at all relevant times Noce and Hastings were, and continue to be, Members of Orphic.  In addition, until they were terminated by Orphic, Noce and Hastings were officers of Orphic and actively managed the Company's day-to-day operations.

83.     Noce and Hastings each owed and continue to owe fiduciary duties to Orphic and its Members, including Malaspina.  By reason of their fiduciary relationships, Noce and Hastings owed and continue to owe Ophic and its Members, including Malaspina, the highest obligations of good faith, fair dealing, loyalty, and due care.

84.     Noce and Hastings each have and had a duty to Orphic and its Members to prudently supervise, manage and control Orphic's operations.

85.     By reason of their other actions described herein – either directly or by aiding and abetting one another – Noce and Hastings breached their fiduciary duties owed to Orphic and Malaspina by acting and continuing to act for their own benefit and to the detriment of Orphic and Malaspina.  Their actions not only breach their corporate duties; they were undertaken in the personal interests of Noce and Hastings.  Noce and Hastings' actions were done without due care for the protection of Orphic and Malaspina's rights.

86.     By their actions, Noce and Hastings – either directly or by aiding and abetting one another – abandoned and abdicated their responsibilities and duties

- 14 -

COMPLAINT

with regard to prudently managing Orphic.

87.     By their actions in terminating or allowing the Lease to expire, by entering into a new lease at the same storefront location, and by contacting consigners and others who had established business relationships with Orphic, which Orphic had the interest, expectancy, and financial resources to continue, Noce and Hastings – either directly or by aiding and abetting one another – breached their fiduciary duty of loyalty to the Company by misappropriating its corporate opportunities.

88.     As a direct result of said breaches of fiduciary duties by Noce and Hastings, Orphic and Malaspina have suffered and will continue to suffer great damage, including lost profits and the tarnishing of Orphic's business, goodwill, and reputation.  Noce and Hastings' misuse of Company funds and assets has had a significant impact on Orphic's financial health and the valuation of its business.

89.     Noce and Hastings acted willfully, maliciously, oppressively, and in conscious disregard of the rights of Orphic and Malaspina, thereby justifying an award of punitive damages against them.

## SECOND CAUSE OF ACTION

**(Violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a))**

**(Orphic Against all Defendants)**

90.     Orphic restates, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

91.     By reason of the foregoing, Orphic hereby asserts a claim against Defendants for injunctive and monetary relief pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), with regards to Defendants' infringement of Orphic's common law trademarks, false designation of origin, and false descriptions and representations in commerce.

92.     Defendants' operation of their retail store and website using Orphic's

common law trademarks, the ORPHIC trade name, and domain name(s) associated with the ORPHIC mark, including orphicla.com, constitutes false designation of origin and false descriptions or representations that Defendants' store and website originate from or are authorized by Orphic, when in fact they are not.

93.    As a result of Defendants' unauthorized use of Orphic's common law trademarks and the ORPHIC trade name and/or marks that are confusingly similar to Orphic's trademarks, the public is likely to be misled and confused as to the source, sponsorship, or affiliation of Defendants' retail store and website.

94.    Defendants' conduct is willful, intended to reap the benefit of Orphic's goodwill, and violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

95.    As a result of Defendants' wrongful conduct, Orphic has suffered and will continue to suffer great damage, including lost profits and the tarnishing of its business, goodwill, and reputation.

96.    Orphic is entitled to injunctive relief and to a preliminary and permanent order barring Defendants from using Orphic's trade name or marks. Orphic has no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) Orphic's trademarks are unique and valuable property which have no readily determinable market value, (b) Defendants' infringement constitutes harm to Orphic such that Orphic could not be made whole by any monetary award, (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, affiliation or sponsorship of Defendants' retail store and website, and (d) Defendants' wrongful conduct, and the resulting damage to Orphic, is continuing.

### THIRD CAUSE OF ACTION

**(Constructive Trust – Cal. Civ. Code §§ 2223 et seq.)**

**(Orphic Against all Defendants)**

97.    Orphic restates, realleges, and incorporates by reference all preceding

- 16 -

paragraphs as though fully set forth herein.

98.     As a result of their tortious conduct described above, Defendants have been unjustly enriched at the expense of Orphic.

99.     Defendants fraudulently concealed their wrongful acts alleged herein, knowing that Orphic would rely upon them as fiduciaries.  Orphic did rely on Defendants as fiduciaries, and only learned of Defendants' wrongful acts through the investigation of counsel.

100.   Defendants should be required to disgorge the improper benefits that they unjustly obtained at the expense of Orphic and its Members.

101.   A constructive trust for the benefit of Orphic, including the fruits of Noce and Hastings' putative business, Noce, LLC, should be imposed immediately upon filing this Complaint.

102.   Orphic seeks damages, plus interest, attorneys' fees, costs, and all such other relief at law and equity to which Orphic may be entitled.  Defendants committed the acts alleged herein with fraud, oppression, or malice, thereby justifying an award of punitive damages against Defendants.

103.   Additionally, the accounts in the names of Defendants should immediately be frozen under a theory of constructive trust, until it is determined how much of the monies deposited in each are the property of Orphic.

## FOURTH CAUSE OF ACTION

### (Unfair Competition – Cal. Bus. & Prof. Code §§ 17200 et seq)

### (Orphic Against all Defendants)

104.   Orphic restates, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

105.   Defendants' unlawful, unfair, and/or fraudulent business practices described above, are in violation of California's Unfair Competition Law.

106.   As a proximate result of Defendant's acts as alleged herein, Orphic has

suffered and will continue to suffer great damage, including lost profits and the tarnishing of its business, goodwill, and reputation.

107. Orphic has no adequate remedy at law for the intentional, willful, and malicious acts of unfair competition as alleged herein. Unless this Court issues an order enjoining Defendants' wrongful conduct, Orphic will suffer irreparable harm to its business, goodwill, and reputation.

108. Orphic is informed and believes, and on that basis alleges that unless restrained and enjoined by this Court, Defendant will continue to engage in the wrongful acts alleged above and cause further irreparable harm for which Orphic will have no adequate remedy at law, in addition to causing Orphic to suffer lost profits, lost sales, and to incur attorneys' fees, court costs, and expenses.

## FIFTH CAUSE OF ACTION
### (Accounting)
### (Orphic and Malaspina Against all Defendants)

109. Orphic and Malaspina restate, reallege, and incorporate by reference all preceding paragraphs as though fully set forth herein.

110. By virtue of Defendants' acts in breach of their fiduciary duties, Orphic and Malaspina do not know the amount of their money being held by Defendants. An immediate accounting is necessary to determine this amount.

111. On numerous occasions commencing in or about September 2014, Orphic and Malaspina, through counsel, orally and in writing demanded a full accounting but Defendants failed and refused, and continue to fail and refuse to provide any such accounting, or indeed, any accounting.

## SIXTH CAUSE OF ACTION
### (Conspiracy)
### (Orphic and Malaspina Against all Defendants)

112. Orphic restates, realleges, and incorporates by reference all preceding

- 18 -

COMPLAINT

paragraphs as though fully set forth herein.

113.   Defendants, and each of them, acted in concert to form an agreement to execute, and actually execute, the wrongful acts detailed above including the misappropriation of Orphic's assets, intellectual property, goodwill, and corporate opportunities and the takeover of its business.

114.   As a proximate result of Defendants' acts as alleged herein, Orphic and Malaspina have suffered and will continue to suffer great damage, including lost profits and the tarnishing of Orphic's business, goodwill, and reputation.

## SEVENTH CAUSE OF ACTION

### (Declaratory Judgment – 28 U.S.C. §2201 and FRCP 57)

### (Orphic Against all Defendants)

115.   Orphic restates, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

116.   Orphic seeks a declaratory judgment in accordance with 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 for the purpose of determining and adjudicating questions of actual and substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of declaratory judgment.

117.   Orphic has common law rights in the ORPHIC trade name and Orphic Logo based on its continuous use of the name and logo both in West Hollywood in connection with its brick-and-mortar retail store, and throughout the United States and internationally in connection with its e-commerce website.

118.   Orphic's customers have come to associate the ORPHIC trade name and Orphic Logo with Orphic's store and website.  Orphic has generated substantial goodwill in connection with the ORPHIC trade name and Orphic Logo, which are distinctive.  Thus, the ORPHIC trade name and Orphic Logo serve as valid trademarks for Orphic and its goods and services.

119.   Defendants have no legitimate rights to the ORPHIC trade name, Orphic Logo, or to any domain names associated with Orphic's trademarks, including the domain name orphicla.com.

120.   There is a real and actual controversy between Orphic and Defendants as to whether Defendants' use of the ORPHIC name and Orphic Logo infringes any rights of Orphic.  Orphic contends that it is the rightful owner of the mark, and that the applications filed by Defendants(s) to register Orphic's marks are fraudulent. Orphic asserts that it, and not Defendants, is the sole and exclusive owner of the ORPHIC name and Orphic Logo.  Conversely, Defendants assert that they – and not Orphic – are the owners of the ORPHIC trade name and Orphic Logo.

121.   Orphic is entitled to a declaration and judgment as to the ownership of the ORPHIC name, Orphic Logo, and orphicla.com domain name.

## EIGHTH CAUSE OF ACTION

### (Indebitatus Assumpsit)

### (Orphic Against Noce and Hastings)

122.   Orphic restates, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

123.   Noce and Hastings, and each of them, as fiduciaries of Orphic, are bailees of Orphic, with the duties to exercise appropriate care for the preservation and safety of Orphic's property entrusted to them, as well as property held by Orphic on consignment.

124.   Noce and Hastings, and each of them, violated this duty by embezzling and converting Orphic's property, and the property of Orphic's consignees, to their own benefit as set forth in the preceding paragraphs of this Complaint through their misappropriation and misconduct.

125.   Therefore, Noce and Hastings are indebted to Orphic in a sum that will be determined at trial.

### NINTH CAUSE OF ACTION

**(Fraudulent Concealment)**

**(Orphic and Malaspina against Noce and Hastings)**

126.   Orphic and Malaspina restate, reallege, and incorporate by reference all preceding paragraphs as though fully set forth herein.

127.   As detailed above, Noce and Hastings were in a fiduciary relationship with Malaspina and Orphic.

128.   Upon information and belief, Noce and Hastings had been planning to subvert and take over the Orphic business for their own purposes from the very moment Malaspina's participation was secured and Orphic was formed.  Noce and Hastings concealed this plan from Malaspina, who would not have invested in Orphic had he known Noce and Hastings' true intentions.

129.   To induce Malaspina to make his initial capital contribution to Orphic, and to continue making further investments in Orphic over the course of its operation, Noce and Hastings continued to actively conceal their true plan from Malaspina.

130.   Noce and Hastings had exclusive knowledge of the fact that in or around June 2014, they had applied for registration of the Orphic Logo with the USPTO in their own names – not in the name of Orphic LLC, the rightful owner of the proprietary rights in the Orphic Logo.  Noce and Hastings concealed from Malaspina the critical fact that they filed the application for registration of the Orphic Logo in their own names.

131.   Noce and Hastings had exclusive knowledge of the fact that in or around September 2014, they had applied for registration of the ORPHIC word mark with the USPTO in their own names – not in the name of Orphic LLC, the rightful owner of the proprietary rights in the ORPHIC mark.  Defendants concealed from Malaspina the critical fact that they filed the application for

registration of the ORPHIC word mark in their own names.

132.   Noce and Hastings also had exclusive knowledge of Orphic's financial information, which they concealed from Malaspina.  Among other things, they concealed their use of corporate funds for personal use and their failure to pay consigners what they were owed.  Further, upon information and belief, Noce made statements to Malaspina intentionally obscuring the true financial health of the business in order to induce Malaspina to continue investing in Orphic over the course of its operation.

133.   Malaspina did not know the facts that were concealed by Noce and Hastings.

134.   Under their fiduciary duties to Malaspina as a Members and as officers of the Company, Noce and Hastings had a duty to disclose the concealed information to Malaspina.

135.   In concealing the facts, Noce and Hastings intended to and did deceive Malaspina.  As described herein, that deception was essential to their overall plan to induce Malaspina to invest substantial money in starting up the Orphic business, and then exclude Malaspina and appropriate the benefits of Malaspina's investment for Noce and Hastings' own commercial gain.

136.   Upon information and belief, Defendants have in the past conducted essentially the same deceptive scheme to defraud other, unrelated investors in their previous business ventures, including in connection with a prior  clothing store similar to Orphic, Sorum Noce, which Noce operated with ex-Guns N' Roses drummer Matt Sorum.

137.   As a proximate result of the foregoing concealments by Defendants, Malaspina was induced to invest initial and subsequent sums of money in Orphic. But for Defendants' concealments, Malaspina would not have made either his initial capital contribution in Orphic or his subsequent investments in the business.

COMPLAINT

138.   As a result of the foregoing, Orphic and Malaspina have suffered substantial damage.  Defendants' concealment is a substantial factor in causing this harm to Orphic and Malaspina.

139.   Given that the business of Orphic is largely dependent on the goodwill of its consignors, Defendants' concealment of their failure to manage the business in the interest of Orphic was extremely damaging to Orphic and its majority Member, Malaspina.

140.   Defendants acted outrageously and persistently with actual malice in performing the acts alleged, and continue to do so, and also acted with callous disregard of the rights of Malaspina which were known to Defendants. Accordingly, Plaintiffs is entitled to exemplary and punitive damages in a sum according to proof and to such other relief as is set forth below in the Prayer for Relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that the Court order the following relief:

A.    For an award of compensatory and consequential damages in an amount to be determined at trial;

B.    For disgorgement of all misappropriated funds and assets held by Defendants;

C.    For creation of a constructive trust;

D.    For immediate appointment of a receiver to oversee the disgorgement into the constructive trust;

E.    For an order attaching the assets of Defendants in such an amount to reasonably protect the interests of Plaintiffs prior to final determination of this matter, and to prevent Defendants from dissipating and hiding assets to prevent their later levy;

COMPLAINT

F.   For an immediate freezing of Defendants' bank accounts and assets until the receiver reports to the Court that funds have adequately been disgorged into the constructive trust;

G.   For a declaratory judgment as to Orphic's right, title, and interest in and to the ORPHIC name, Orphic Logo, and orphicla.com domain name;

H.   For a declaratory judgment that Defendants have no right, interest, or ownership in the ORPHIC trade name, Orphic Logo, and orphicla.com domain name;

I.   For entry of an Order granting temporary, preliminary and permanent injunctive relief restraining and enjoining Defendants, their officers, agents, employees, and attorneys, and all those persons or entities in active concert or participation with it from:

(a)  making use of the ORPHIC name, Orphic Logo, or any other marks confusingly similar thereto;

(b)  engaging in any other activity constituting unfair competition with Orphic, or acts or practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations or marks associated with Orphic;

(c)  committing any other act which falsely represents or which has the effect of falsely representing that the goods and services of Defendants are licensed by, authorized by, or in any other way associated with Orphic;

J.   For an immediate accounting;

K.   For exemplary and punitive damages in an amount to be determined;

- 24 -

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

L.     For an award of interest, costs, and attorneys' fees incurred by

Plaintiffs in prosecuting this action, including reasonable costs to

Plaintiffs' accountants and experts; and

M.     For such other and further relief as this Court deems just and proper.

Dated:  December 10, 2014

By: /s/ Carole E. Handler
Carole E. Handler
Attorneys for Plaintiff
ORPHIC, LLC

Dated:  December 10, 2014

By: /s/ Elizabeth A. Bell
Elizabeth A. Bell
Attorney for Plaintiff
CURRADO MALASPINA

- 25 -

COMPLAINT

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand jury trial of all issues that may be tried to a jury.

Dated:  December 10, 2014

By: /s/  Carole E. Handler
    Carole E. Handler
    Attorneys for Plaintiff
    ORPHIC, LLC

Dated:  December 10, 2014

By: /s/  Elizabeth A. Bell
    Elizabeth A. Bell
    Attorney for Plaintiff
    CURRADO MALASPINA

- 26 -

COMPLAINT